JACK N JILL DONUTS INC V. LLOYD



NO. 07-03-0269-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 2, 2005



______________________________




JACK N JILL DONUTS, INC., APPELLANT



V.



EDWARD LLOYD, INDIVIDUALLY AND D/B/A


A FRANCHISEE OF JACK N JILL DONUTS, APPELLEE




_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-519,037; HONORABLE WILLIAM C. DODSON, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Appellant Jack N Jill Donuts, Inc. perfected this appeal to challenge the trial court's
judgment in favor of appellee Edward Lloyd, individually and d/b/a a franchisee of Jack N
Jill Donuts. The final judgment recites that Jack N Jill take nothing by its suit and that
Edward Lloyd recover attorney's fees in the amount of $17,500.

 Pending before this Court is an agreed judgment by which the parties request we
reverse that portion of the trial court's judgment awarding Lloyd and EDEB, Ltd. attorney's
fees and render judgment that they take nothing from Jack N Jill. (2) The parties further
request that the portion of the judgment holding that Jack N Jill take nothing from Lloyd and
EDEB, Ltd. be affirmed. Finally, the parties agree to bear their own costs. The agreed
judgment is signed by counsel for all parties.

 Pursuant to Rule 42.1(a)(2)(A) of the Texas Rules of Appellate Procedure we
reverse and render in part and affirm in part. To effectuate the parties' agreement, that
portion of the trial court's judgment awarding Edward Lloyd, individually and d/b/a a
franchisee of Jack N Jill Donuts, and EDEB, Ltd., is reversed and judgment is hereby
rendered that they take nothing from Jack N Jill, Donuts, Inc. The portion of the judgment
that Jack N Jill Donuts, Inc. take nothing against Edward Lloyd, individually and d/b/a a
franchisee of Jack N Jill Donuts, and EDEB, Ltd. is in all other respects affirmed. Costs
are to be assessed by the party incurring them.

 Don H. Reavis

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Although not mentioned in the final judgment, EDEB, Ltd. was made a party to the
underlying case by Jack N Jill Donuts, Inc.'s live pleading. The final judgment provides that
it disposes of all claims and all parties.



 may in any event disclose on direct examination, or be required to\
disclose on cross-examination, the underlying facts or data.
\
'

var WPFootnote6 = ' See Tex. Health & Safety Code Ann. § 481.112 (Vernon 2002).
\
'

var WPFootnote7 = ' Texas Health and Safety Code section 481.112 identifies a continuum in the line\
of drug distribution. No matter where along this line the actor is apprehended, he may be\
prosecuted. However, even though the actor may progress along the continuum and,\
therefore, commit multiple prohibited acts under the statute, if each of those acts relates\
to one transaction, then the actor may only be prosecuted for the one single offense. Id.\
at 297-302.
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-08-0081-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 12, 2009

______________________________


CORBETT K. WEINN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-416,147; HON. CECIL G. PURYEAR, PRESIDING

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ. 
MEMORANDUM OPINION
          Appellant, Corbett K. Weinn, entered a plea of nolo contendere to possession with
intent to deliver a controlled substance, methamphetamine, of less than 400 grams but at
least 200 grams, and appellant entered a plea of guilty to manufacturing a controlled
substance, methamphetamine, of less than 400 grams but at least 200 grams. A jury
subsequently assessed punishment at confinement in the Institutional Division of the Texas
Department of Criminal Justice for a period of 30 years on each offense. The trial court
ordered that the sentences be served concurrently. Appellant appeals claiming that he
was denied effective assistance of counsel and that convictions for both offenses subjected
him to double jeopardy. We will vacate the judgment for the offense of manufacture of
methamphetamine and affirm the balance of the trial court’s judgment.
Factual and Procedural Background
          On April 6, 2007, deputies from the Lubbock County Sheriff’s Office responded to
a citizen complaint about a strange smell coming from an area adjacent to the caller’s
residence. Upon arriving at the scene, deputies could smell what they determined to be
anhydrous ammonia coming from the area of a shed behind appellant’s residence. Upon
arriving on the scene and contemporaneously with investigating the smell coming from the
shed, appellant was observed going from the shed to a pickup truck, later identified as
belonging to appellant. The deputies detained appellant at this time and continued to
investigate the source of the odor of ammonia. Following the detention of appellant,
deputies searched his person and found a glass pipe, that was described as being of the
type used in the consumption of narcotics, and several baggies, at least one of which later
tested positive for methamphetamine. One of the deputies entered the shed to determine
if there were any other individuals inside and immediately noticed that the smell of
anhydrous ammonia was extremely strong. One deputy testified that the smell was so
strong that he immediately backed out of the shed. Another deputy testified that he
searched appellant’s pickup truck for officer’s safety. The truck was located adjacent to
the shed and the search produced empty blister packs of Sudafed, empty cans of starter
fluid, and a plastic “jug” which contained a liquid thought to be methamphetamine. 
Appellant later gave permission for the officers to search his house and the shed. The
search of the house and shed revealed items typically used in the manufacture and
distribution of methamphetamine. The items seized were transported to the Department
of Public Safety (DPS) laboratory in Lubbock, Texas, for testing and examination.
          Appellant was subsequently indicted in a three count indictment alleging possession
with intent to manufacture methamphetamine (Count I), possession with intent to distribute
methamphetamine (Count II), and manufacture of methamphetamine (Count III). Each
count alleged an aggregate weight of less than 400 grams but at least 200 grams, thereby
making each offense a first degree felony. Prior to jury selection, the State abandoned
Count I of the indictment. Appellant’s counsel interposed an objection to proceeding on
both of the remaining counts of the indictment, contending that proceeding on the
remaining counts would violate appellant’s rights against double jeopardy. The trial court
overruled appellant’s objection. Appellant advised the trial court that he intended to enter
pleas of nolo contendere to Count II of the indictment and guilty to Count III of the
indictment. A jury was subsequently selected to determine punishment.
          During the hearing on punishment, Scott Williams, a forensic scientist with the DPS,
testified that the plastic jug with the liquid in it, that had been recovered from the pick-up
truck, contained two distinct layers. Williams testified that he tested the clear liquid layer
and found it to be methamphetamine weighing 224.96 grams. The bottom layer was
described as a by-product of the methamphetamine extraction process. Williams stated
that he did not test the bottom layer. During Williams’s cross-examination, appellant’s
counsel presented a report from an independent laboratory stating that the top layer was
only 7 percent methamphetamine. The report further revealed that the bottom layer also
contained methamphetamine. During the State’s re-direct examination, Williams testified
that the bottom layer had a total weight of 200 grams.
          Appellant introduced evidence through family members that he suffered from
attention deficit hyperactivity disorder (ADHD). Appellant’s theory of the case was that he
was manufacturing the methamphetamine for his own use as self-medication for his
ADHD. Appellant’s sister testified that appellant had admitted that he started using speed
to overcome his ADHD while in college. The State cross-examined appellant’s sister
regarding a letter she had written to appellant offering advice about steps he should take
to make himself more presentable to a jury and the court. Appellant’s mother testified
regarding things she observed during appellant’s youth that may indicate that he suffered
from ADHD while he was growing up. Finally, appellant presented the testimony of C. J.
Schoenrock, Ph.D. in human development, who testified about her experience in
diagnosing ADHD in patients and the effects of self-medication as opposed to prescribed
medication. 
          After both sides had closed, the jury was charged and both sides argued their
respective positions. The jury returned a sentence of 30 years on each count. The trial
court ordered that the sentences be served concurrently. This appeal followed. 
          We will address appellant’s claims of ineffective assistance of counsel first. 
Appellant alleges that he was denied effective assistance of counsel in four particulars: the
failure of counsel to object to certain evidence used in plea negotiations, the failure of
counsel to preserve error as to certain privileged material before the jury, the failure of
counsel to object to improper jury argument, and the failure of counsel to preserve error
as to prosecutorial misconduct.
Effective Assistance of Counsel
          In determining whether counsel’s representation was so inadequate as to violate a
defendant’s Sixth Amendment right to counsel, Texas courts adhere to the two-pronged
test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). See Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). Judicial
review of an ineffective assistance of counsel claim must be highly deferential to trial
counsel and avoid using hindsight to evaluate counsel’s actions. Ingham v. State, 679
S.W.2d 503, 509 (Tex.Crim.App. 1984). There is a strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance. Strickland, 466
U.S. at 690. The burden is on appellant to prove by a preponderance of the evidence that
counsel was ineffective. See McFarland v. State, 928 S.W.2d 482, 500 (Tex.Crim.App.
1996) (en banc). To meet this burden, an appellant must first prove that counsel’s
performance was deficient, i.e., that counsel’s assistance fell below an objective standard
of reasonableness. Id. If the appellant has demonstrated deficient assistance of counsel,
it is then necessary that the appellant affirmatively prove that he was prejudiced by the
deficient assistance. Id. In proving prejudice, appellant must prove a reasonable
probability that, but for counsel’s errors, the result of the proceeding would have been
different. Id.; Hernandez, 726 S.W.2d at 55. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Hernandez, 726 S.W.2d at 55. 
          Any allegation of ineffective assistance of counsel must be firmly founded in the
record and the record must affirmatively demonstrate the alleged ineffectiveness. 
McFarland, 928 S.W.2d at 500. Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. Id. Absent both
showings, an appellate court cannot conclude the conviction resulted from a breakdown
in the adversarial process that renders the result unreliable. Ex parte Menchaca, 854
S.W.2d 128, 131 (Tex.Crim.App. 1993). Appellate courts look to the totality of the
representation and the particular circumstances of each case in evaluating the
effectiveness of counsel. Ex parte Felton, 815 S.W.2d 733, 735 (Tex.Crim.App. 1991).


 
It is possible that a single egregious error of omission or commission by appellant’s
counsel can constitute ineffective assistance. Id. 
          In the case before the court, appellant has alleged that trial counsel was ineffective
in four particular areas. We will address each in turn.
Document used in plea negotiations
          By his first contention, appellant posits that trial counsel was ineffective by failing
to object to the State’s cross-examination of appellant’s sister, Linda Grant, with a letter
that Grant had written to appellant. Appellant’s argument is grounded on the fact that the
letter was produced by trial counsel for the State’s consideration during plea bargain
negotiations. As such, according to appellant’s theory, rule 410(4) of the Texas Rules of
Evidence prohibits the use of such evidence against the appellant.


 In support of this
proposition, appellant cites the court to Neugebauer v. State, 974 S.W.2d 374, 376-77
(Tex.App.–Amarillo 1998, pet. ref’d). However, Neugebauer only tangentially involved rule
410(4), inasmuch as the central issue was not statements made during plea bargain
negotiations, but rather whether the communication in question was privileged as attorney-client communication. See Id. at 377. Further, rule 410, by its own terms, does not apply
to a situation where the defendant enters a plea of guilty or nolo contendere and there is
no subsequent effort to withdraw the plea. Rule 410(4)


; May v. State, No. 07-04-0228-CR,
2005 Tex.App. LEXIS 1885, at *7-*9 (Tex.App.–Amarillo March 10, 2005, pet. ref’d) (not
designated for publication). In appellant’s instance, he entered a plea of nolo contendere
to Count II and guilty to Count III, therefore, rule 410(4) does not apply. Accordingly,
counsel could not have been ineffective for failing to object to the State’s use of the letter
for purposes of cross-examination, as the objection would have been correctly overruled. 
Inasmuch as the trial court would have been correct in overruling any objection under rule
410(4), the failure of appellant’s trial counsel to object could not be indicative of deficient
performance of counsel. See McFarland, 928 S.W.2d at 500.
Failure to preserve error as to a violation of attorney-client privilege
          Appellant next contends that his trial counsel was ineffective when C. J.
Schoenrock, Ph.D., was called as an expert witness to testify about the effects of
appellant’s ADHD and the likelihood that appellant was more vulnerable to addiction to
methamphetamine. According to appellant, trial counsel failed in his duty to object to the
State’s questioning Schoenrock about testing she administered to appellant and notes she
had taken during her interview of appellant. Under the theory proposed by appellant, this
information was a privileged communication that was meant only for trial counsel and the
State had no right to explore the same. Accordingly, appellant contends that trial counsel
was derelict in his duty by failing to object quickly enough and, further, for failing to
continue to object or obtain a running objection to that line of questions. Appellant’s
contention turns on whether the information was, in fact, a privileged communication under
the rules that would shield the witness from having to divulge the substance of the
communication. See Rule 503.



          In determining an answer to this question, the interplay of the rules in regard to
expert testimony must be considered. See Rule 705(a).


 The record reflects that
Shoenrock was testifying as an expert witness for the defense. Once she offered her
expert opinion, the State was entitled to examine her about the factual underpinning of that
opinion. See Wheeler v. State, 67 S.W.3d 879, 883 (Tex.Crim.App. 2002). Since the
State was allowed to ask about the facts and data upon which the expert’s opinion was
based, the trial court would have been correct in overruling any objection to this line of
questioning. Therefore, the failure of trial counsel to preserve error in this respect could
not be indicative of ineffective assistance of counsel. See McFarland, 928 S.W.2d at 500. 
Failure to Object to Prejudicial Jury Argument
          Appellant’s third allegation of ineffective assistance of counsel complains that the
State, during final arguments, engaged in prejudicial argument that counsel failed to object
to. When reviewing allegations of improper argument, we analyze the argument to see if
it falls into one of the four areas of proper jury argument. See Lagrone v. State, 942
S.W.2d 602, 619 (Tex.Crim.App.1997). Those areas are: (1) summation of evidence
presented at trial; (2) reasonable deductions drawn from evidence presented at trial; (3) 
answers to opposing counsel’s argument; or (4) plea for law enforcement. Id. To
determine whether jury argument properly falls within one of these categories, we must
consider the argument in light of the record as a whole. Wilson v. State, 938 S.W.2d 57, 
61 (Tex.Crim.App. 1996). To constitute reversible error, the argument must be extreme
or manifestly improper, violative of a mandatory statute, or have injected new facts, harmful
to the accused, into the trial proceedings. Id at 59. The argument must be considered
within the context in which it appears. Gaddis v. State, 753 S.W.2d 396, 398
(Tex.Crim.App. 1988). 
          Appellant complains of two separate arguments that the State made. In the first, 
the State, argued the following:He’s been charged with over 200 grams. But the Defense’s own lab comes
back, he’s got meth over 400 grams, with adulterants and dilutants.
 
Later, during closing, the State revisits this area and again tells the jury that, in fact,
appellant had over 400 grams of methamphetamine and as such would not be eligible for
probation, but would be facing incarceration for 15 years to life. According to appellant,
this argument did not fall within the parameters of permissive argument. However, such
assertion by appellant is incorrect. The record clearly demonstrates that the forensic
chemist for the State testified that he tested only the liquid portion of the contents of the
plastic jug. This resulted in a weight of 224.96 grams of methamphetamine, including
adulterants and dilutants. However, during cross-examination of the State’s forensic
chemist, appellant’s counsel was allowed to examine the witness about the results from
tests conducted by an independent lab for appellant. Subsequently, during re-direct
examination, the State elicited the following testimony:
Q. Okay. So you tested the top layer, which contained methamphetamine,
and it came back with 229 point something grams; correct?

 
A. That is correct.

 
Q. And you– like you said earlier, you typically don’t test the bottom layer
because it’s considered trash?

 
A. We consider it trash in the sense that the top layer is going to be where
the methamphetamine is headed or going to. So we typically do not analyze
the bottom layer. . . .

 
Q. Defendant’s Exhibit 1, the lab report that corresponds with State’s Exhibit
28, which would be the bottom layer of that substance, contained meth, did
it not?

 
A. Yes, it does.

 
Q. Another 200 grams of substance that contains meth; correct?

 
A. Yes, it would.

 
Q. A controlled substance in the State of Texas, 200 grams?

 
A. That is correct.

 
Q. So, actually, what was in here was over 400 grams?

 
A. If you counted the top and bottom layer, yes.
 
The record includes evidence upon which the State could have charged appellant with
manufacturing or possession of up to 400 grams of methamphetamine. Therefore, the
argument of the State that appellant complains of is both a summation of the record and
a reasonable deduction from the record. Hence, the argument was not objectionable. See
Lagrone, 942 S.W.2d at 619. As the argument was not objectionable, the failure of
counsel to object was not ineffective assistance of counsel. See McFarland, 928 S.W.2d
at 500. 
          Next, appellant complains about the following argument made by the State during
closing arguments: 
What do you want to do with someone who manufactures that stuff and
intends to distribute it to the people who we work with, to the kids who go to
school here? That’s what you have to ask yourself. It’s as simple as that. 
Thank you.
 
Appellant contends that the above argument was nothing more than an attempt to
prejudice the jury by arguing that appellant was selling methamphetamine to children. 
Further, appellant contends that the argument was timed so as to be the last words heard
by the jury before they began deliberations.
          When considering allegations of improper jury argument, the appellate court must
examine the context of the complained-of argument. Gaddis, 753 S.W.2d at 398. A
review of the record before us demonstrates that appellant’s theory throughout the trial was
that the methamphetamine he manufactured was only for personal consumption. This
theory was continuously pressed during appellant’s closing argument. In reply, the State
pointed out that appellant had all the parts necessary to distribute methamphetamine. 
Further, appellant had, in fact, entered a plea of nolo contendere to possession with intent
to distribute methamphetamine. This leads to the complained-of argument, wherein the
State makes a generic reference to what a person does with methamphetamine that they
have manufactured, specifically that they distribute it. In describing who the contraband
would be distributed to, the State’s attorney did not single out children, rather he asked the
jury to consider who the methamphetamine would be distributed to. When placed in the
context in which the argument arises, this rhetorical question was a proper plea for law
enforcement. See Lagrone, 942 S.W.2d at 619. Inasmuch as we have determined that
the argument was not improper, the failure to object to that argument could not be
evidence of ineffective assistance of counsel. See McFarland, 928 S.W.2d at 500. 
Failure to Preserve Prosecutorial Misconduct
          Appellant’s final contention regarding ineffective assistance of counsel deals with
a comment made by the State’s attorney while giving the State’s opening summation. The
State’s attorney stated that there were two counts in the case before the jury and that any
sentence that the jury would give appellant would run concurrently. Appellant’s counsel
objected to this statement and the trial court sustained the objection and, consistent with
appellant’s request, instructed the jury to disregard the comment. There was no request
for a mistrial. Appellant now contends that the failure to request a mistrial was ineffective
assistance of counsel because nothing has been preserved for appeal. See Del Carmen
Hernandez v. State, 219 S.W.3d 6, 14 (Tex.App.–San Antonio 2006), aff’d, PD-1879-06,
2008 Tex.Crim. App. LEXIS 1304 (Tex.Crim.App. Oct. 15, 2008). 
          The failure of appellant’s counsel to request a mistrial could only be termed an act
of ineffective assistance of counsel if a mistrial should have been granted. The granting
or denying of a mistrial is within the discretion of the trial court. See Kipp v. State, 876
S.W.2d 330, 339 (Tex.Crim.App. 1994). A trial court abuses its discretion when its action
or decision is not within the zone of reasonable disagreement. Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh’g). Mistrial is an extreme remedy for
prejudicial events occurring during the trial process. See Bauder v. State, 921 S.W.2d 696,
698 (Tex.Crim.App. 1996), rev’d on other grounds, Ex parte Bauder, 974 S.W.2d 729
(Tex.Crim.App. 1998). Finally, mistrial is used to halt trial proceedings when error is so
prejudicial that expenditure of further time and expense would be wasteful and futile. See
Wood v. State, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000). A trial court may properly
exercise its discretion to declare a mistrial if an impartial verdict cannot be reached or if a
verdict of conviction could be reached but would have to be reversed on appeal due to an
obvious procedural error. Id. The determination of whether a given error necessitates a
mistrial must be made by examining the particular facts of the case. Id. Further, the law
presumes that a jury will follow a trial court’s instruction to disregard and that such
instruction is sufficient to cure any issue raised by the improper jury argument. See Corwin
v. State, 870 S.W.2d 23, 37 (Tex.Crim.App. 1993). 
          An examination of the record reflects that the trial court, during discussions of the
court’s charge on punishment, stated that a jury considering punishment in a multiple count
indictment case would usually send out a question about whether the sentences would be
served concurrently or consecutively. The trial court proceeded to advise the parties that
he would have no issue if either side were to advise the jury that the sentences would run
concurrently. Appellant’s counsel objected to this procedure and the trial court stated, “If
you object, we’ll leave it out.” Appellant’s counsel stated, “I object to it.” To which the trial
court stated, “Okay.” 
          Subsequently, during opening argument, the State’s attorney made the objected to
argument. The record reflects that was the only time that the topic was mentioned before
the jury. Further, the record demonstrates that, even though appellant was facing up to
99 years or life imprisonment on each count, the jury assessed 30 years imprisonment. 
Based upon these facts, we cannot say the denial of a motion for mistrial would have been
error by the trial court. See Wood, 18 S.W.3d at 648. Accordingly, the failure to request
a mistrial was not an act of ineffective assistance of counsel. See McFarland, 928 S.W.2d
at 500. 
          Appellant next argues that the cumulative effect of the four prior allegations of
ineffective assistance of counsel prejudiced his right to a fair trial. However, having
determined that none of the four acts complained of were, in fact, acts of an ineffective
counsel, appellant’s rights were not prejudiced. Accordingly, appellant’s issue on alleged
ineffective assistance of counsel is overruled.
Double Jeopardy
          Appellant’s first issue contends that his convictions for possession with intent to
distribute methamphetamine and manufacturing methamphetamine are, in fact, attempts
to punish appellant twice for the same offense. After analyzing the statute under which
appellant was charged, both the appellant and the State agree that there was but one
offense.


 Having reviewed the statute, we agree that punishing appellant for the
manufacture and possession with intent to distribute the same cache of drugs does violate
appellant’s protection from being punished twice for the same offense. See U.S. Const.
amend. V; Lopez v. State, 108 S.W.3d 293, 302 (Tex.Crim.App. 2003).



          The remedy when a violation of the double jeopardy clause has occurred is to
vacate the lesser sentence and retain the greater sentence. See Ex parte Cavazos, 203
S.W.3d 333, 337 (Tex.Crim.App. 2006). In the case before the court, both offenses were
punished by confinement for a period of 30 years. Additionally, both are first degree felony
offenses. Therefore, we are to retain the conviction on the offense charged first. See Ex
parte Drake, 883 S.W.2d 213, 216 (Tex.Crim.App. 1994). Accordingly, the judgment of
conviction as to Count III of the original indictment, for the offense of manufacturing
methamphetamine less than 400 grams but at least 200 grams, is vacated. 
Conclusion
          We vacate the trial court’s judgment for the offense of manufacturing
methamphetamine and affirm the judgment of the trial court for the offense of possession
with intent to distribute methamphetamine.
 
Mackey K. Hancock

Justice

Publish.